UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THOMAS E. PEREZ, Secretary of
the United States Department of Labor                                          PLAINTIFF

v.                                                            CIVIL ACTION NO. 3:13cv1001-DPJ-FKB

HERBERT C. BRUISTER, et al.                                          DEFENDANTS

consolidated with

JOEL D. RADER and VINCENT SEALY                                          PLAINTIFFS

v.                                                            CIVIL ACTION NO. 3:13cv1081-DPJ-FKB

HERBERT C. BRUISTER, et al.                                          DEFENDANTS

ORDER

This ERISA action is before the Court on Plaintiffs' Motion for Attorneys' Fees [486].

Having fully considered the premises, the Court finds that fees and expenses should be awarded

for the reasons that follow.

I.      Background

The facts and procedural history of this case are documented in *Perez v. Bruister*, which

is incorporated herein by reference.  54 F. Supp. 3d 629, 652  59 (S.D. Miss. 2014).  In very

general terms, Joel D. Rader and Vincent Sealy filed this suit seeking relief on behalf of an

Employee Stock Option Plan ("ESOP") to which they claimed to be participants.  In their suit,

Plaintiffs asserted that Defendants breached their fiduciary duties, causing the ESOP to pay

inflated prices for stock purchases.  A second suit brought by the Department of Labor pursued

these same claims, and the cases were eventually consolidated after discovery and tried together

on August 4 through August 28, 2014.  The Court held that Sealy had standing to sue and

returned a judgment in his favor on behalf of the plan as a whole.  *Id.* at 647, 681.  The Sealy

Plaintiffs now seek reasonable attorneys' fees and expenses.

II.     Analysis

       A.     Whether Fees Are Warranted

       Pursuant to 29 U.S.C. § 1132(g), "the court in its discretion may allow a reasonable

attorney's fee and costs of action to either party."  Historically speaking, courts within the Fifth

Circuit were required to apply the five-factor test outlined in *Iron Workers Local No. 272 v.*

*Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).[1]

       But the United States Supreme Court rejected the mandatory nature of this test in *Hardt v.*

*Reliance Standard Life Insurance Co.*, holding that "[b]ecause these five factors bear no obvious

relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for

channeling a court's discretion when awarding fees under this section."  560 U.S. 242, 254  55

(2010); *see also LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 846 (5th

Cir. 2013) (observing that *Bowen* factors are no longer mandatory).

       "As the Court stated in *Hardt*, the requirement for an award of fees is that a party achieve

some degree of success on the merits."  *1 Lincoln Fin. Co. v. Metro. Life Ins. Co.*, 428 F. App'x

394, 396 (5th Cir. 2011) (citing *Hardt*, 560 U.S. at 255).  To meet this standard, a claimant must

---

[1]Those factors included:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of
the opposing parties to satisfy an award of attorneys' fees; (3) whether an award
of attorneys' fees against the opposing parties would deter other persons acting
under similar circumstances; (4) whether the parties requesting attorneys' fees
sought to benefit all participants and beneficiaries of an ERISA plan or to resolve
a significant legal question regarding ERISA itself; and (5) the relative merits of
the parties' positions.  *Id.*

2

achieve more than "trivial success on the merits . . . ."  *Hardt*, 560 U.S. at 255 (citation and

quotation marks omitted).  Once that showing is made, "a district court may consider whether

fees are appropriate under" the five Bowen factors.  *1 Lincoln Fin. Co.*, 428 F. App'x at 396.  In

the present case, Plaintiffs obviously achieved more than "trivial success . . . ."  *Hardt*, 560 U.S.

at 255.  They are therefore eligible for an award of reasonable attorneys' fees.[2]

B.      Fee Calculus

Having concluded that a fee award is warranted, the Court must determine a reasonable

amount.  The Fifth Circuit has frequently applied the following approach:

> The calculation of attorney's fees involves a well-established process.  First, the
> court calculates a "lodestar" fee by multiplying the reasonable number of hours
> expended on the case by the reasonable hourly rates for the participating lawyers.
> *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).  The
> court then considers whether the lodestar figure should be adjusted upward or
> downward depending on the circumstances of the case.  *Id.*  In making a lodestar
> adjustment the court should look to twelve factors, known as the *Johnson* factors,
> after *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)
> [discussed *infra*].

*Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

In the present case, the Sealy Plaintiffs seek $3,240,551.10 in attorneys' fees and another

$416,052 in expenses.  Pls.' Mot. [486] at 1.  The amount reflects a lodestar base of

$2,700,459.25 plus an upward adjustment of 20 percent.  Pls.' Mem. [487] at 8.  While

Defendants assert that this is an "astronomical sum," Defs.' Response [500], it is far less than

---

[2]Even under *Bowen*, the result would remain the same.  "No one of these factors is
necessarily decisive, and some may not be apropos in a given case, but together they are the
nuclei of concerns that a court should address in applying section 502(g)."  *Bowen*, 624 F.2d at
1266.  In the present case, the third through fifth factors strongly favor an award.  The first factor
also favors an award due to the obvious efforts to inflate prices.  *See Bruister*, 54 F. Supp. 3d at
652 59.  The only *Bowen* factor that might mitigate against awarding fees is the ability to pay,
but that issue remains cloudy.

they spent.  Moreover, Defendants do not dispute the rates, number of lawyers, or any specific

hour claimed on the attached invoices.  Nor do they dispute any reported expense.  Instead,

Defendants generally take an all-or-nothing approach, arguing that the Sealy attorneys were

unnecessary and duplicative once the Secretary filed the companion case.  *Id.* at 4, 9  10.[3]

     1.      Lodestar

Starting with the lodestar issues, the Court finds that the rates sought by the Sealy

attorneys are appropriate given the complexity of the litigation and the skill and experience of the

attorneys.  As stated, the rates are not disputed.  As for the time and expenses, "[t]he fee

applicant bears the burden of proof in showing the reasonableness of the hours applied for:  It

must provide documentation that will enable the district court to verify this showing . . . ."

*Rappaport v. State Farm Lloyds*, 275 F.3d 1079, 2001 WL 1467357, at *3 (5th Cir. 2001)

(unpublished decision).  Here, Plaintiffs submitted 365 pages documenting their time and

expenses, including line-item entries for all billable hours over a six-year period.  Defendants do

not dispute the sufficiency of these exhibits, and having reviewed them, the Court concludes that

they satisfy Plaintiffs' burden of production.

Finally, as to the time sought, "[t]he applicant should exercise 'billing judgment' with

respect to hours worked . . . ."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  In this case,

Plaintiffs represent that "[t]he lodestar was calculated by using substantially reduced rates for the

Keller Rohrback and Yezbak law firms" and that they wrote off "substantial hours of attorney

---

[3]This argument really challenges whether Plaintiffs are entitled to fees *vel non*.  But
because there is no dispute Plaintiffs achieved some level of success on the merits, the argument
does not fit with that statutory inquiry.  For that reason, the Court will consider it when
addressing the reasonable fee award.

and professional time not deemed appropriate for fee shifting." Pls.' Reply [501] at 7. A review of the records indicates that the Yezbak Law Office reduced its rates 12.34 percent, lowering the billable amount by $53,766.00. That same firm reduced attorney hours by 30.6 and paralegal hours by 81.7. Yazbak Decl. [488-1] ¶¶ 17, 18. Similar reductions by Keller Rohrback, LLP reduced the lodestar by $105,090.70. Greenwald Decl. [487-1] ¶ 17.

While these reductions may be somewhat modest considering the vast scope of work, the Sealy attorneys also made efforts to avoid duplicating efforts. For example, Attorney Gary Greenwald managed the litigation, and his time accounts for the bulk of the billed hours. Plaintiffs generally sent one attorney to each deposition. Pls.' Mem. [487] at 9. Defendants often sent two. *See, e.g.*, Aff. [469] (attaching multiple deposition transcripts). And Attorney Charles Yezbak was responsible for certain key witnesses at trial, but was not in attendance other days. In sum, Plaintiffs have demonstrated billing judgment.

In any event, Defendants have not disputed any of the line items, arguing instead that no fees should be awarded. Having reviewed the billing records and the write-offs, the Court will not engage in a line-by-line review of over six-years worth of invoices when no such dispute has been raised. The Court will, however, examine the overall fee request in light of the Defendants' arguments.

It should first be noted that the lodestar amount Plaintiffs claim, $2,700,459.25, appears to be reasonable given the scope and complexity of this case. Counsel was first engaged in August 2008, and the matter was tried over 19 *full* days in August 2014. Over the course of those six intervening years, the parties engaged in heavy and highly contentious discovery and motion practice. For example, the combined records in these cases now include over 1,300

5

docket entries.  And, of course, the litigation did not end with the trial.  While the fee request is for a substantial sum, it is the result of considerable effort and is less than half the fees defense counsel billed defending these two cases.  So in terms of a raw number, the fee is reasonable.

Turning more specifically to Defendants' arguments, the Court cannot agree that the Sealy Plaintiffs added no incremental value or that their efforts were duplicative.  To begin with, the Sealy case was the first filed, and Sealy had the statutory right to pursue the claim on behalf of the Plan.  *See* 29 U.S.C. § 1132(a)(2)  (3).  Once the Secretary filed suit, the Sealy Plaintiffs agreed to consolidate discovery.  *See* July 23, 2010 Min. Entry (noting that parties agreed to consolidate).  But on September 16, 2010, United States District Judge Henry T. Wingate refused Defendants' unopposed motion to consolidate the cases, so discovery commenced on separate tracks.  *See* Sept. 16, 2010 Order [98].

According to the Sealy Plaintiffs, Defendants thereafter refused an informal request to consolidate depositions, and as a result, numerous witnesses were repeatedly deposed.  Pls.' Reply [501] at 6.  Two years later, in April 2012, the Sealy Plaintiffs moved to consolidate the cases for all purposes.  Pls.' Mot. [299].  Defendants opposed the motion, Defs.' Resp. [305], and over thirty depositions were thereafter noticed in the two cases.  It was not until December 2013, that the undersigned   having then been assigned to the case   consolidated the two actions for all purposes *sua sponte*.  *See* Dec. 31, 2013 Order [563].  By then though, discovery had concluded.  The Sealy Plaintiffs had a right to prosecute their claim, and Defendants declined efforts to avoid potential fees through consolidation.

After consolidation, many issues overlapped.  That said, there were also issues unique to the Sealy Plaintiffs (primarily dealing with standing), and Sealy had its own witnesses in addition

6

to those it shared with the Secretary.  Moreover, it was apparent that the Sealy Plaintiffs and the Secretary coordinated their cases, splitting up the leads on various examinations to reduce expenses.  Finally, the Court expressly finds that the Sealy attorneys added considerable value to the prosecution of these claims through their briefing, preparation, and courtroom appearances.

Nevertheless, Defendants argue that "[u]nder the circumstances of the filing of the Secretary's action, the reasonable response by the [Sealy] Counsel would have been to defer to the Secretary's vast resources and not operate to escalate the fees incurred in their representation."  Defs.' Reply [500] at 2.   In other words, they should have just dropped it.  But the Sealy suit itself presented certain advantages and assurances that the Secretary's cause lacked.  First, the Sealy claims arguably triggered insurance coverage for Defendants in a way the Secretary's cause could not.  Second, the Sealy claim was not encumbered by the statute-of-limitations issue Defendants pursued against the Secretary.  Though the Secretary ultimately prevailed on that argument, it was litigated through final judgment.[4]

In sum, Congress allowed participants to bring claims such as this, and denying fees would strongly discourage the exercise of that statutory right.  Nothing required the Sealy Plaintiffs to bow out when the Secretary subsequently filed a companion case that proceeded on a separate track through discovery.  Indeed, the Sealy case presented certain advantages over the Secretary's case.  The Sealy attorneys were skilled and knowledgeable in ESOP litigation, and they added incremental value in the Court's estimation.

---

[4]The Secretary lost a different statute-of-limitations issue with respect to transactions not disputed by the Sealy Plaintiffs.  *See Harris v. Bruister*, No. 4:10cv77  DPJ  FKB, 2013 WL 6805155, at *7  8 (S.D. Miss. Dec. 20, 2013).

2.      *Johnson* Factors

There exists "a strong presumption that the lodestar represents the reasonable fee . . . . And 'the district court should not enhance the lodestar unless the prevailing party shows that enhancement is *necessary* to make the award of attorneys' fees reasonable.'"  *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993) (emphasis in original, punctuation altered) (citing *Blum v. Stenson,* 465 U.S. 886, 897  98 (1984)).

Plaintiffs encourage the Court to do so in this case, seeking a 20 percent enhancement based on the following *Johnson* factors:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

488 F.2d at 717  19.

*Johnson*'s viability has taken a few hits.  For example, in *Perdue v. Kenny A. ex rel. Winn*, the United States Supreme Court stated that the lodestar approach has "become the guiding light of our fee-shifting jurisprudence."  559 U.S. 542, 551 (2010) (citation and quotation marks omitted).  The Court mentioned *Johnson* as an alternative methodology, but was critical of its "series of sometimes subjective factors."  *Id.*

*Perdue* has not, however, been interpreted as overruling the Fifth Circuit's practice of using the *Johnson* factors when considering enhanced or reduced fees.  *See DaSilva v. U.S. Citizenship & Immigration Servs.*, 599 F. App'x 535, 541 (5th Cir. 2014) ('[T]he *Johnson* factors

allow either upward or downward adjustments." (citing *Perdue*)); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (using *Johnson* factors post *Perdue*).

Still, not all *Johnson* factors remain viable in all cases. For example, "enhancement for contingency is not permitted under the fee-shifting statutes . . . ." *Burlington v. Dague*, 505 U.S. 557, 567 (1992). And *Perdue* tells us that "superior results are relevant only to the extent it can be shown that they are the result of superior attorney performance." 559 U.S. at 554.

Even before *Perdue*, the Fifth Circuit had already limited a number of *Johnson* factors when redundant to the lodestar approach. For example, in *Shipes v. Trinity Industries*, the Fifth Circuit held that "[f]our of the Johnson factors   the novelty and complexity of the issues [factor 2], the special skill and experience of counsel [3], the quality of representation [9], and the results obtained from the litigation [8]   are presumably fully reflected in the lodestar amount." 987 F.2d 311, 320  21 (5th Cir. 1993) (holding that upward adjustments for these factors would be "proper only in certain rare and exceptional cases"). The *Shipes* court also found that "time limitations [7]" were "accounted for in the lodestar amount," and that "preclusion of other employment [4] . . . will ordinarily be subsumed within the lodestar amount." *Id.* at 321  22.

In the present case, lodestar adequately addresses these and other factors. To begin, lodestar obviously addresses "the time and labor required for the litigation [1]" and "the customary fee [5]." *Johnson*, 488 F.2d at 717  19. The same is true in this case for the novelty of the questions [2]; the skill, experience, reputation, and ability of counsel [3 and 9]; the preclusion of other employment [4]; and the amount involved and results [8].

In particular, the significant number of hours billed reflects the challenges of the case. *See Perdue*, 599 U.S. at 553 ("We have thus held that the novelty and complexity of a case

9

generally may not be used as a ground for an enhancement because these factors presumably are fully reflected in the number of billable hours recorded by counsel."  (Citation and punctuation omitted)).

Likewise, the hourly rates account for the nature of the representation and the characteristics of counsel.  In particular, Sealy's attorneys have argued that their rates are comparable to the national norm, and they offer evidence regarding rates approved for similar litigation in other regions.  But the Fifth Circuit has rejected that approach.  *See In re ASARCO, L.L.C.*, 751 F.3d 291, 297 (5th Cir. 2014) (holding that "this court, like the Supreme Court, has not held that reasonable attorneys' fees in federal court have been 'nationalized'") (citing *Perdue*, 559 U.S. at 551; *McClain v. Lufkin Indust., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011)).

Plaintiffs also contend, and perhaps correctly so, that there have been few ERISA cases in Mississippi, so a comparison of local rates is not possible.  But there have been plenty of other complex cases, yet no information is provided to compare.  Plaintiffs do offer an exhibit listing the average billing rates for "major law firms across the country."  Pls.' Mem. [487] (citing Ex. I [490-5]).  But this document is of limited use because it reflects national rates, the firms are predominately in major United States cities and are substantially larger than the firms in this case, and the fees are not broken out by the type of work.

Perhaps a more relevant set of figures gleaned from this exhibit relate to the "average" and "high" partner rates for firms with a presence in Mississippi.  Although the figures for these regional firms are not limited to work in Mississippi, the figures still suggest that a premium has

been sought.[5]  For example, the average partner rate for these firms comes to $392 per hour.  The highest rate charged by these firms was, on average, $540.  Thus, Mr. Yezbak's $400 rate is an above-average rate when compared to these large regional firms.  Mr. Watson's $375 rate is below average, but he served as local counsel, and the rate he seeks is well above the $250 an hour he sought and received as local counsel in *Alexander v. City of Jackson, Mississippi*, No. 3:04CV614 HTW  LRA, 2011 WL 1059293, at *14 (S.D. Miss. Mar. 21, 2011).  As for Mr. Greenwald, Plaintiffs seek $700 per hour, which is well above the high average for these regional firms and is higher than the highest rate charged by any of them.  Moreover, he billed 3,975.61 of the recorded 5,888.71 hours.

To be clear, the rates were not disputed, and the Court finds that they should be paid.  But Mr. Greenwald's rate amply reflects an increase that would fully account for the *Johnson* factors that relate to the nature of the case and his attributes as a litigator.  Moreover, the considerable hours billed account for the complexity of the matter.  *See Perdue*, 599 U.S. at 553.  The Court therefore believes that the lodestar fully addresses these issues.

Of the remaining factors, Plaintiffs say little about "the nature and length of the professional relationship with the client" or "awards in similar cases" in this venue.  *Johnson*, 488 F.2d at 719.  What they have provided on those issues is not sufficient to enhance on these two grounds.  *See Perdue*, 559 U.S. at 553 (holding that "a fee applicant seeking an enhancement must produce 'specific evidence' that supports the award" (citation omitted)).

---

[5]The Court considered the rates for Adams and Reese (New Orleans, Louisiana); Baker Donelson, Bearman, Caldwell & Berkowitz (Memphis, Tennessee); Bradley Arant Boult Cummings (Birmingham, Alabama); Burr & Forman (Birmingham, Alabama); and Jones Walker (New Orleans, Louisiana).  *See* Ex. "I" [490-5].

So that generally leaves "undesirability" and "performance."  These factors are now somewhat linked after *Perdue*.  In that case, the Court concluded that in "rare and exceptional" circumstances an attorney's performance might justify an enhancement, but that it would "require specific evidence that the lodestar fee would not have been adequate to attract competent counsel . . . ."  *Id.* (citation and internal quotation marks omitted).

Those rare circumstances include first, "where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value."  *Id.* at 554  55.  "Second, an enhancement may be appropriate if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted."  *Id.* at 555.  Finally, "there may be extraordinary circumstances in which an attorney's performance involves exceptional delay in the payment of fees."  *Id.* at 556.

In the present case, the rates sought appear to be more than true market value for this jurisdiction.  As for the expenditures, Sealy's counsel did extend expenses which will be awarded, but *Perdue* explains that that is not alone sufficient.  "[T]he attorney presumably understands that no reimbursement is likely to be received until the successful resolution of the case, and therefore enhancements to compensate for delay in reimbursement for expenses must be reserved for unusual cases."  *Id.* at 555 (citation omitted).  All cases of any size will have expenditures, and the expenditures here are neither rare nor unusual.  Finally, as to delay in payment, this again is not unusual.  The present matter is still on appeal, and in any event, "[c]ompensation for this delay is generally made either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."  *Id.* at 556 (citation and

internal quotation marks omitted).  The rates sought appear to be current, and there has been no

showing otherwise.

While the Court must consider all factors, it retains discretion when deciding whether to

"*act* upon" them.  *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 330 (5th Cir. 1995)

(emphasis in original).  Here, the Court has considered all factors and concludes that the lodestar

amount is reasonable.  The fees and expenses exceed $3,000,000, and Plaintiffs fail to show by

"specific evidence that the lodestar fee would not have been adequate to attract competent

counsel."  *Id.*  They therefore fail to overcome the "'strong presumption' that the lodestar figure

is reasonable."  *Perdue*, 559 U.S. at 554.

Finally, Defendants have not challenged Plaintiffs' right to seek expenses or the amount

sought, other than to make the general argument that Sealy should have stepped aside when the

Secretary filed suit.  The expenses sought appear reasonable and will be awarded.

III.     Conclusion

Based on the foregoing, the Court awards the Sealy Plaintiffs $416,052 in expenses and

$2,700,459.25 in attorneys fees against Defendants.

**SO ORDERED AND ADJUDGED** this the 29th day of September, 2015.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE